**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:07cr024-MEF |
| | ) | |
| JERRY DON ARD | ) | |

### SENTENCING MEMORANDUM

### FACTS

Jerry Don Ard is a master plumber who has lived and worked all his life in the Wiregrass Region of Alabama. Until August of 2006, he lived with his fiancée, Paula Staley, and her seven-year-old son in a mobile home in Dothan.

More than 16 years ago, when Mr. Ard was just 21 years old, he was involved in two very serious situations that came to light in the space of one week, and that would change his life forever. First, Mr. Ard became involved in a romantic relationship with Sheila Espy, who was many years his senior, and who was also married. On April 30, 1991, Ms. Espy's husband, an influential man in South Alabama, returned home to find his wife and Mr. Ard together. At that point, Mr. Ard wanted nothing but to leave the Espys' home, however, Mr. Espy blocked Mr. Ard's way out of the house. Mr. Ard, desperate to leave the home, pointed a pistol at Mr. Espy and told him to move out of the way, so that Mr. Ard could leave. Mr. Ard then left as quickly as possible.

Exactly one week later, police searched Mr. Ard's home and found marijuana. Subsequently, Mr. Ard was convicted of Possession of Marijuana in the 1st Degree, for

which he was sentenced to prison in September 1991.

Mr. Ard was also prosecuted for the incident involving the Espys. Initially he was prosecuted for rape and burglary. Those charges were completely unfounded, however, and were actually an attempt by the Espys to prevent the truth from becoming known concerning the consensual relationship in which Mr. Ard had engaged with Mrs. Espy. Mr. Ard was twice tried on those charges, but each time the trial ended in a hung jury. Only then did prosecutors in Houston County add a charge for which they knew they could win a conviction–kidnapping. Under Alabama law, when Mr. Ard pointed a gun at Mr. Espy and told him to move, Mr. Ard committed a kidnapping. In December 1992, Mr. Ard pled guilty to that charge, with the sentence to run concurrently with his previous marijuana conviction.

Mr. Ard was paroled from prison on the kidnapping charge in December 1997. Mr. Ard was then a man who was nearly 28 years old, and who was considerably wiser than when he had gone to prison at the age of 21. From the time of his release on parole in 1997, Mr. Ard lived a law-abiding life–he had absolutely no convictions, or even arrests, on any other criminal charges–until August 2006. Then on August 14, 2006, Mr. Ard was taken into custody for violating the terms of his parole, because parole officers found four old, rusty .22 caliber rifles stored in the trailer where Mr. Ard lived. Mr. Ard contends that how he and those rifles ended up in that trailer together is of utmost importance to this Court in fashioning an appropriate sentence in this case.

In 2005, Mr. Ard's sister, Jenny, was married to Randy Gilley. Mr. Gilley's father became ill and had to be moved from his home to a nursing home; the elder Mr. Gilley had

almost no prospect of ever returning to his own home. The Gilleys were confronted with the daunting task of sorting through the personal belongings that the elder Mr. Gilley had accumulated over his lifetime. They disposed of some items, while they placed many other items in storage. The elder Mr. Gilley had several guns. His son kept those guns that were in good repair, but left four rusty .22 caliber rifles with the numerous other items that were destined for storage. One of the places that the Gilleys stored some of the elder Mr. Gilley's belongings was in a mobile home that Mrs. Gilley owned, and which was located at 192 Butler Road in Dothan. In passing, Mrs. Gilley mentioned to her brother, Mr. Ard, that the rifles were among the items that she was moving to the mobile home.

In the Spring of 2006, Mr. Ard and Ms. Staley lived in an apartment together. A dispute arose with the landlord over the upkeep and repair of the apartment and rent payments. As a result of this dispute, the landlord had Mr. Ard and Ms. Staley evicted. In need of a place to stay, Mr. Ard asked his sister if he, Ms. Staley and her son could move into the mobile home on Butler Road. Mrs. Gilley agreed that they could, but she explained that the trailer was literally filled wall to wall and floor to ceiling with personal belongings that she and her husband had moved out of the elder Mr. Gilley's home. Despite the disheveled condition of the trailer, Mr. Ard, Ms. Staley and her son moved into the mobile home in late May or early June of 2006.

The master bedroom of the trailer, which included a bathroom, was off the kitchen. After they moved in, Mr. Ard and Ms. Staley cleared enough space in the master bedroom so that the three of them could sleep comfortably in that room. By August 2006, they had

not yet cleared the rest of the trailer; they used only the master bedroom and the kitchen, entering and leaving the trailer through the back door, which opened into the kitchen. At no time after moving into the trailer did Mr. Ard or Ms. Staley notice the four rifles in the corner of the living room that were stored in amongst a mass of other assorted items; indeed, they weren't using that part of the trailer at all, and didn't venture back there.

On August 14, 2006, three parole officers came to the trailer where Mr. Ard lived for a home visit. They knocked first at the front door, then at the back door, and then again at the front door. Mr. Ard, who was sleeping when they began knocking, awoke and let them into the trailer through the front door. Mr. Ard met with the parole officers in the living room. While Mr. Ard spoke with two of the parole officers, the third officer walked to the back of the trailer and then returned to the living room. As he walked toward the kitchen he noticed the barrel end of a rifle sticking up from behind some boxes. Upon further investigation, the parole officers discovered the four .22 caliber rifles named in the indictment. When Mr. Ard was later interrogated by one of the parole officers, he admitted that his sister had mentioned to him some year or so earlier that she would be storing the rifles in the trailer. That admission resulted in his parole revocation on October 3, 2006. Mr. Ard was then indicted in this case on February 22, 2007.

## DISCUSSION

In light of the Supreme Court's opinion in *United States v. Booker*, the sentencing court's determination of the appropriate sentence is no longer confined to a determination of the appropriate offense level, criminal history, and availability of authorized downward

departures. Rather, under the post-*Booker* discretionary sentencing regime, the advisory United States Sentencing Guidelines (hereinafter "Guidelines") range is only one factor among several that this Court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). It is the sentencing statute, not the Sentencing Commission, which now governs the sentencing process.

The overriding principle and basic mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). In determining the sentence minimally sufficient to comply with the purposes of sentencing, the court must consider several factors, which include, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational and vocational training. 18 U.S.C. §3553(a)(1) and (2). Moreover, under 18 U.S.C. §3661, *"no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added).

In fashioning an appropriate sentence for Mr. Ard, he suggests that the Court should take particular note of several important factors. First, the Court should consider that Mr. Ard has been to prison just once, when he was a young man of 21. Second, and more

importantly, for nearly nine years after his release from prison Mr. Ard demonstrated that he could be a productive, law-abiding member of society. Eight-plus years is a very long time for anyone to endure supervision while on parole. In the vast majority of criminal cases, a defendant would have completed a period of supervision in far less time than that. Despite having no arrests or convictions during the nearly nine years after his release from prison, because he was still on parole, the United States Probation Officer in this case had no choice but to give Mr. Ard an additional two criminal history points in calculating his criminal history category in the Presentence Investigation Report (PSR). These two points increased Mr. Ard's criminal history points from six to eight, which moved him from Category III to Category IV. This increased his advisory Guidelines range from 30 to 37 months to 37 to 46 months. Under the circumstances of this case, Mr. Ard suggests that assigning him a criminal history category of IV overstates his criminal history.

The advisory Guidelines recognize that a defendant's properly-calculated criminal history category may overstate the seriousness of his criminal history or his risk of recidivism. Guidelines §4A1.3(b)(1). This is because "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." Guidelines §4A1.3, *Commentary, Background*. While the Guidelines discuss an overstated criminal history by stating that a downward departure may be warranted under such circumstances, Mr. Ard argues that the term "downward departure" ceases to have any real meaning under an advisory-Guidelines scheme. Under an advisory-Guidelines scheme, the only question the Court now must answer is how much weight to accord to an overstated

criminal history when fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). Nonetheless, for the sake of clarity, before determining what the appropriate sentence is in this case, Mr. Ard believes that this Court should make a specific finding that the PSR overstates his criminal history, and that the properly-calculated advisory Guidelines range should then be based on an offense level of 17 and a Criminal History Category of III, making his Guidelines range 30 to 37 months.

Third, and most importantly, the Court should consider the circumstances surrounding Mr. Ard's possession of the guns in this case. The facts are not in dispute. This case involves the barest of constructive possession. Further, his constructive possession was inadvertent. There is absolutely no evidence that Mr. Ard ever attempted to exercise any actual dominion or control over the rifles that happened to be stored in the same trailer where he lived, or that he was ever in actual possession of the rifles, or that he even sought to exercise constructive possession over the rifles. The facts of this case can be summed up this way: Mr. Ard happened to end up living temporarily in a trailer where his sister had stored some worthless .22 caliber rifles. Had his sister not mentioned to Mr. Ard in passing a year or so earlier that she intended to store the rifles in the trailer, he wouldn't have been guilty of a crime at all.

In considering all the factors set forth in 18 U.S.C. §3553(a)(2), Mr. Ard contends that the sentence this Court adjudges should run concurrently with the sentence that Mr. Ard is now serving for his parole revocation, and that he should receive credit for the time he has

already served on that revocation. The United States has recommended exactly that in the plea agreement it entered into with Mr. Ard. Mr. Ard has already served 14 months and 16 days on his parole revocation. He will not be eligible for parole again until October of 2008. Mr. Ard recommends a sentence of 11 months, to run concurrently with the sentence he is now serving for his parole revocation. Such a sentence would end at the same time that Mr. Ard becomes eligible to be paroled again on his state sentence. When crediting Mr. Ard for the time that he has already served, a sentence of 11 months would reflect a total sentence of approximately 25.5 months, all of which, when completed, would have run concurrently with Mr. Ard's state sentence. Mr. Ard contends that such a sentence adequately reflects the seriousness of his offense under the particular circumstances of this case, adequately takes into consideration his personal history and characteristics, and further reflects a reasoned consideration of all the remaining sentencing factors set forth in 18 U.S.C. §3553(a)(2).

Dated this 28th day of October, 2007.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **Case No.: 1:07cr024-MEF** |
| ) | |
| **ANDREW PRESTON Ard** ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Kent Brunson, Assistant U. S. Attorney.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: don_bethel@fd.org
IN Bar Code: 14773-49